## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

Norberto Medina-Rodriguez.

    Plaintiff

v.

[1] China Temple, Inc.

[2] LI ZHI WEI, also known as ZHI WEI LI

    Defendant(s)

**CIVIL ACTION**

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Norberto Medina Rodriguez, individually and on behalf of all other individuals similarly situated, (hereinafter referred to as "Plaintiff") hereby sues the Defendants, [1] China Temple, Inc. doing business as China Temple, and [2] LI ZHI WEI, *also known as* ZHI WEI LI, doing business as China Temple (hereinafter referred to as "Defendant") for Injunctive Relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA"), and pursuant to the Puerto Rico Civil Rights Act, P.R. Laws Ann. tit. 1, § 13 et seq.

### JURISDICTION AND VENUE

1.    Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. See also 28 U.S.C. § 2201 and § 2202.

2.     Venue is properly located in the District of Puerto Rico because venue lies in the judicial district of the property *situs*. The Defendant's property is located in and does business within this judicial district.

## PARTIES

3.     Plaintiff is a Puerto Rico resident, lives in Carolina, Puerto Rico, is *sui juris*, and qualifies as an individual with disabilities as defined by the ADA. Plaintiff is severely limited or unable to engage in the major life activity of **sitting, standing, and walking**. At the time of Plaintiff's visit or around June 22, 2016 to Defendant's facility and prior to instituting this action, Plaintiff suffered from a "qualified disability" under the ADA, a **permanent walking abnormality, that is, abnormal, uncontrollable walking patterns as a result of a leg injury and bone damage. The Puerto Rico Department of Motor Vehicles issued a *permanent* handicap permit (No. 2015982 – parking spaces) to the Plaintiff**. The Plaintiff personally visited the Defendant's facility but was denied full and equal access and full and equal enjoyment of the facilities, services, goods, and amenities within Defendant's facility, even though he would be classified as a "bona fide patron". During this visit, Plaintiff experienced unnecessary difficulty and risk because no purportedly accessible parking space was designated as "accessible" or "van accessible."

4.     Plaintiff will avail himself of the services offered at the facility in the future, provided that the Defendant modify the Premises or modify its' policies and practices to accommodate individuals who use wheelchairs. Plaintiff frequently travels to the area wherein Defendant operates the subject facility to conduct various activities, including, but not limited to shopping. Plaintiff plans to avail himself of the goods and services offered to the public at the property return on or around December 15, 2016.

5.      Completely independent of the personal desire to have access to this place of public accommodation free of illegal barriers to access, Plaintiff also acts as a "tester" for the purpose of discovering, encountering, and engaging discrimination against the disabled in public accommodations. When acting as a "tester," Plaintiff employs a routine practice. Plaintiff personally visits the public accommodation; engages all of the barriers to access, or at least all of those that Plaintiff is able to access; and tests all of those barriers to access to determine whether and the extent to which they are illegal barriers to access; proceeds with legal action to enjoin such discrimination; and subsequently returns to the premises to verify its compliance or non-compliance with the ADA and to otherwise use the public accommodation as members of the able-bodied community are able to do. Independent of other subsequent visits, Plaintiff also intends to visit the premises annually to verify its compliance or non-compliance with the ADA, and its maintenance of the accessible features of the premises. In this instance, Plaintiff, in Plaintiff's individual capacity and as a "tester," visited the Facility, encountered barriers to access at the Facility, and engaged and tested those barriers, suffered legal harm and legal injury, and will continue to suffer such harm and injury as a result of the illegal barriers to access and the ADA violations set forth herein. It is the Plaintiff's belief that said violations will not be corrected without court intervention, and thus the Plaintiff will suffer legal harm and injury in the near future.

6.      Defendant owns, leases, leases to, or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104. The place of public accommodation that the Defendant owns, operates, leases or leases to is known as China Temple, a restaurant at  Roberto Clemente Avenue, Carolina,

Puerto Rico (hereinafter "Subject Facility"). Defendant also maintains and controls the

Subject Facility (picture below corroborates that there are no accessible parking spaces at

the Subject Facility):



## VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

7.    Plaintiff adopts and re-alleges the allegations stated in paragraph "1" through "6"of this

complaint as if fully stated herein.

8.    On July 26, 1990, Congress enacted the Americans With Disabilities Act ("ADA"), 42

U.S.C. §12101 et. seq. Commercial enterprises were provided one and a half years from

enactment of the statute to implement its requirements. The effective date of Title III of

the ADA was January 26, 1992, or January 26, 1993 if Defendant(s) have ten (10) or

fewer employees and gross receipts of $500,000 or less. See 42 U.S.C. §12182; 28 C.F.R.

§36.508(a).

9.    Congress found, among other things, that:

    a.    some 43,000,000 Americans have one or more physical or mental disabilities, and

       this number shall increase as the population continues to grow older;

b.  historically, society has tended to isolate and segregate individuals with disabilities and, despite some improvements, such forms of discrimination against disabled individuals continue to be a pervasive social problem, requiring serious attention;

c.  discrimination against disabled individuals persists in such critical areas as employment, housing, public accommodations, transportation, communication, recreation, institutionalization, health services, voting and access to public services and public facilities;

d.  individuals with disabilities continually suffer forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and regulation to lesser services, programs, benefits, or other opportunities; and

e.  the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our country is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non- productivity.

42 U.S.C. §12101(a)(1)-(3), (5) and (9).

10.  Congress explicitly stated that the purpose of the ADA was to:

a.  provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

b.  provide, clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and,

c.  invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced on a daily by people with disabilities.

U.S.C. §12101(b)(1)(2) and (4).

11.  Pursuant to 42 U.S.C. §12182(7), 28 CFR §36.104 and the 2010 ADA Standards, Defendant's facility is a place of public accommodation covered by the ADA by the fact it is an establishment which provides services to the general public, and must be in compliance therewith. The building and/or Subject Facility which is a subject of this action is a public accommodation covered by the ADA and which must be in compliance therewith. As the owner, lessor, lessee, or operator of the Subject Facility, Defendant is required to comply with the ADA. To the extent the property, or portions thereof, existed prior to January 26, 1993 ("pre-existing facility"), the owner, lessor, lessee, or operator has been under a continuing obligation to remove architectural barriers at that property whose removal was readily achievable, as required by 42 U.S.C. Section 12182. To the extent that the property, or portions thereof, were constructed after January 26, 1993 ("newly constructed facility"), the owner, lessor, lessee, or operator was under an obligation to design and construct such facilities such that they are readily accessible to and usable by individuals with disabilities, as required by 42 U.S.C. Section 12183. To the extent that the facility, or portions thereof, were altered in a manner that affects or could affect its usability ("altered facility"), the owner, lessor, lessee, or operator was under an obligation to make such alterations in such a manner that, to the maximum

extent feasible, the altered portions are readily accessible to and usable by persons with disabilities. Pursuant to 28 C.F.R. part 36.404, all newly constructed facilities were required to comply with the Standards For New Construction And Alterations, set forth in Appendix A to 28 C.F.R. part 36 ("ADAAG").  Pursuant to 28 C.F.R. part 36.404, all altered facilities were required to comply with the ADAAG to the maximum extent feasible.  Pursuant to 28 C.F.R. part 36.304, all measures taken to comply with barrier removal requirements of 42 U.S.C. Section 12182 must also comply with the ADAAG to the maximum extent feasible. Failure to comply with these requirements constitutes a violation of the ADA.

12.    The Defendant has discriminated and continues to discriminate against the Plaintiff and others who are similarly situated, by denying access to, and full and equal enjoyment of goods, services, facilities, privileges, advantages and/or accommodations located at the Subject Facility as prohibited by 42 U.S.C. §12182, and 42 U.S.C. §12101 et. seq., and by failing to remove architectural barriers pursuant to 42 U.S.C. §12182(b)(2)(A)(iv).

13.    Plaintiff has visited the Subject Facility, and has been denied full and safe equal access to the facilities and therefore suffered an injury in fact.

14.    Plaintiff intends to return within the next six months provided the defendants modifies the facility to enjoy the goods and/or services at the Subject Facility on a spontaneous, full and equal basis. However, Plaintiff is precluded from doing so by the Defendant's failure and refusal to provide disabled persons with full and equal access to their facilities. Therefore Plaintiff continues to suffer from discrimination and injury due to the architectural barriers which are in violation of the ADA.

15.   Pursuant to the mandates of 42 U.S.C. §12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General promulgated Federal Regulations to implement the requirements of the ADA See 28 CFR §36 and its successor the 2010 ADA Standards ADA Accessibility guidelines (hereinafter referred to as "ADAAG"), 28 C.F.R. Part 36, under which said Department may obtain **civil penalties of up to $55,000 for the first violation and $110,000 for any subsequent violation**. The Plaintiff reserves his right to file a formal complaint with the U.S. Department of Justice.

16.   The Defendant is in violation of 42 U.S.C. §12182 et. seq. and the 2010 American Disabilities Act Standards et. seq., and is discriminating against the Plaintiff as a result of inter alia, the following specific violations:

### SITE ARRIVAL POINTS

a)   This property fails to comply with section; 206.2.1 Site Arrival Points. At least one accessible route shall be provided within the site from accessible parking spaces and accessible passenger loading zones; public streets and sidewalks; and public transportation stops to the accessible building or facility entrance they serve. This violation made it dangerous for Plaintiff to get to the entrance of the facility. Plaintiff had a hard time getting out of his vehicle and finding an area that would allow him to exit his vehicle safely. Plaintiff was able to get out of his vehicle only after much struggle, and felt very unsafe since there was no access aisle at the facility. Plaintiff had to maneuver throughout the outside facility into traffic coming to park at the Defendant's Facility. Plaintiff felt there was no protection from moving cars.

b)   This property fails to comply with section; 502.2 Vehicle Spaces. Each parking space must be at least 12 feet (3658 mm) wide, shall be marked to define the width, and shall have an adjacent access aisle complying with 502. This violation made it dangerous for Plaintiff to transgress the parking lot. Plaintiff did not have an aisle with which to safely exit his vehicle. Therefore, Plaintiff had a hard time getting out of his vehicle and finding an area that would allow him to exit his vehicle safely. Plaintiff was able to get out of his vehicle only after much struggle, and felt very unsafe since there was no access aisle at the facility. Plaintiff had to maneuver throughout the outside facility into traffic coming to park at the Defendant's Facility. Plaintiff observed there was no protection from moving cars.

c)   This property fails to comply with section; 502.3 Access Aisle. Access aisles serving parking spaces shall comply with 502.3. Access aisles shall adjoin an accessible route. Two parking spaces shall be permitted to share a common access aisle. This violation made it dangerous for Plaintiff to transgress the parking lot. Plaintiff did not have an aisle with which to safely exit his vehicle. Therefore, Plaintiff had a hard time getting out of his vehicle and finding an area that would allow him to exit his vehicle safely. Plaintiff was able to get out of his vehicle only after much struggle, and felt very unsafe since there was no access aisle at the facility. Plaintiff had to maneuver throughout the outside facility into traffic coming to park at the Defendant's Facility. Plaintiff observed there was no protection from moving cars.

d)     This property fails to comply with section; 502.4 Floor or Ground Surfaces. Parking spaces and access aisles serving them shall comply with 302. Access aisles shall be at the same level as the parking spaces they serve. Changes in level are not permitted. This violation made it dangerous for Plaintiff to transgress the parking lot.

**FOOD COURT**

e)     Does the accessible portion of each service/sales counter extend the same depth as the counter top? No, in violation of section 904 of the 2010 ADAAG thus denying the Plaintiff equal access to goods and services at the Facility and/or Property.

f)     The Facility and/or Property lacks any seating spaces which are accessible to persons with disabilities in violation of Sections 226, 226.1 and 902 of the 2010 ADAAG thus denying the Plaintiff equal access to goods and services.

**SALES COUNTER**

g)     The interior of the Facility has sales and services counters lacking any portion of the counter that has a maximum height of **36 inches from the finished floor** in violation of section 904.4 of the 2010 ADAAG regulations, all portions of the sales and service counter exceed 36 inches in height from the finished floor. This violation made it difficult for Plaintiff to properly transact business at the Facility.

h)     Providing **counter heights exceeding 36 inches** making it impossible or unnecessarily difficult to service a disabled person pursuant to 2010 ADAAG §§ 904, 904.4, 904.4.1, 904.4.2.

**RESTROOM**

i)   Providing **grab bars** of improper horizon lenth or spacing on the back or the side wall in violation of 2010 ADAAG secs. 604, 604.5, 604.5.1, 604.5.2, 609, 609.4.

j)   Failure to provide **toilet paper dispensers** in the proper position in front of the water closet or at the correct height above the finished floor in violation of 2010 ADAAG secs 604, 604.7., and 309.4.

k)   Failure to provide **mirror(s)** located above the lavatories or countertops at the proper height above the finished floor. 2010 ADAAG secs 603, 603.3.

l)   Failure to provide the **water closet in the proper position** relative to the side wall or partition in violation of 2010 ADAAG secs 604, 604.2.

m)   Failure to provide **signage for an accessible restroom** or failure to redirect a disabled person to the closests available accessible restroom facility in violation of 2010 ADAAG secs  216, 216.2, 216.6, 216.8, 603, 703, 703.1, 703.2, 703.5, and 703.2.1.

n)   The sink hardware has operable parts which require **tight grasping, pinching or twisting of the wrist** in violation of section 309.4 of the 2010 ADAAG regulations. This made it difficult for Plaintiff to utilize the restroom facilities

o)   There is inadequate **clear turning space** in the stall in violation of section 603.2.1 of the 2010 ADAAG regulations. This made it difficult for Plaintiff to safely utilize the restroom facilities.

p)   Failure to provide the minimum required **circular turning clearance** for a disabled person due to a wall or some other obstruction that does not comply with standards 2010 ADAAG §§ 304, 304.3, 304.3.1, 603, 603.2 and 603.2.1.

q)   Providing **grab bars of improper horizontal length or spacing** on the back or side wall pursuant to 2010 ADAAG §§ 604, 604.5, 604.5.1, 604.5.2, 609, 609.4.

r)   Failure to provide **grab bars at 33 inches minimum and 36 inches maximum** above the finish floor measured to the top of the gripping surface pursuant to 2010 ADAAG §§ 604, 609, 609.4.

17.   To the best of Plaintiff's belief and knowledge, the Defendant has failed to eliminate the specific violations set forth in paragraph 16. Plaintiff has attempted to gain access to the Facility and/or Property in his capacity as a customer, but because of his disability has been denied access to, and has been denied the benefits of services, programs, and activities of the Facility and/or Property, and has otherwise been discriminated against and damaged by Defendants, because of the physical barriers, dangerous conditions and ADA violations set forth above, and expect to be discriminated against in the near future by Defendants because of Plaintiff's disabilities, unless and until Defendants are compelled to remove unlawful barriers and conditions and comply with the ADA.

18.   All of the above violations are readily achievable to modify in order to bring the Facility/Property into compliance with the ADA as the modifications can be easily accomplished and are able to be carried out without much difficulty or expense. 42 U.S.C.12182 (b)(2)(A)(iv); 42 U.S.C. 12181(9); 28 C.F.R. 36.304.

19.   Upon information and belief the Defendant has the financial resources to make the necessary modifications.

20.   Upon information and belief the Property has been altered since 2010.

21.   In instances where the 2010 ADAAG standard does not apply, the 1991 ADAAG standard applies and all of the violations listed in paragraph 16 can be applied to the 1991 ADAAG standards.

22.   Plaintiff is a frequent visitor of the area where Defendant's property is located. As alleged in paragraph 3, Plaintiff visited the property which forms the basis of this lawsuit and at that time and place, he encountered the discriminatory violations described in paragraph 16.

23.   As an individual with limited mobility, Plaintiff has a keen interest in whether public accommodations have architectural barriers that impede full accessibility to those accommodations by individuals with mobility impairments.

24.   Plaintiff plans to return to the property to avail himself of the goods and services offered to the public at the property and to determine whether the property has been made ADA compliant. As detailed in paragraph 16, Plaintiff has encountered barriers at the subject property which discriminate against him on the basis of his disability.  In the alternative, Plaintiff is an advocate of the rights of similarly situated disabled persons and is a "tester" for the purpose of asserting his civil rights and monitoring, ensuring, and determining whether places of public accommodation are in compliance with the ADA.

25.   Plaintiff should not be discouraged from pointing out public accommodations that are breaking the law. From 1991 to 2015, 25 years, there was no meaningful enforcement of the Title II/III of the ADA in Puerto Rico, and the results are obvious: architectural

barriers everywhere. Tester standing is imperative to ensure that the rights guaranteed by the ADA do not become meaningless abstractions. Many people are reluctant to bring lawsuits against businesses for violations of the ADA or are unaware of what constitutes a violation under a very cumbersome and technically detailed statute. Other victims of ADA violations may not have the incentive or the resources to bring ADA lawsuits. Thus testers, as private attorneys general, serve a vital role in redressing the injuries suffered due to violations of Title III of the ADA. Overall, denying relief to individuals who prove they were victims of discrimination, even as testers, weakens and undercuts congressional intent to deter and remedy discrimination through utilization of private individuals to enforce the statute. In fact, the Supreme Court supported the idea of private attorneys general in the employment context, stating: "We have rejected the unclean hands defense `where a private suit serves important public purposes.' Plaintiff plan to return to the property as a "tester" for the purpose of asserting his civil rights and monitoring, ensuring, and determining whether places of public accommodation are in compliance with the ADA. As civil right activist, Plaintiff intent to return to the Subject Facility to verbally and face-to-face demand ADA compliance to Defendant's manager's within six months.  Plaintiff's "undisputed tester motive behind his plan to return does not defeat standing." Houston v. Marod Supermarkets, Inc., 733 F.3d 1323 (11th Cir. 2013); *See also* Colorado Cross Disability Coal v. Abercrombie & Fitch Co., 765 F.3d 1205, 1211 (10th Cir. 2014); Houston v. Marod Supermarkets, Inc., 733 F.3d 1323, 1332 (11th Cir. 2013); D'Lil v. Best W. Encina Lodge & Suites, 538 F.3d 1031, 1040 (9th Cir. 2008); see also Steelman v. City of Salem, No. 4:12-CV-00191, 2013 WL 1363792, at 4 (E.D. Mo. Apr. 4, 2013); Betancourt v. 2 Combs Enterprises, Inc., No. 10-3364-CV-S-

MJW, 2011 WL 846849, at *3 (W.D. Mo. Mar. 8, 2011). As the Eighth Circuit and other appellate courts have recognized, private litigation serves as an important means to enforce the public policy behind civil rights statutes such as the ADA and serial litigants serve a valuable purpose as private attorneys generals ensuring that the ADA yields its promises of equal access to disabled persons. See Shaver v. Indep. Stave Co., 350 F.3d 716, 724-25 (8th Cir. 2003) (citing Kyles v. J.K. Guardian Sec. Servs., Inc., 222 F.3d 289, 299 (7th Cir. 2000); see also Molski v. Evergreen Dynasty Corp., 500 F.3d 1047, 1062 (9th Cir. 2007); Bruce v. City of Gainesville, Ga., 177 F.3d 949, 952 (11th Cir. 1999).

26.   The violations present at Defendant's facility create a hazard to Plaintiff's safety.

27.   Plaintiff is continuously aware of the violations at Defendant's facility and is aware that it would be a futile gesture to return to the property as long as those violations exist unless he is willing to suffer additional discrimination.

28.   The remedial provision of Title III states that "[n]othing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions." 42 U.S.C. § 12188(a)(1). In the legislative history of the ADA, Congress noted that the "futile gesture" doctrine was set forth in the case of International Bhd. of Teamsters v. United States, 431 U.S. 324 (1977). See H.R. Rep. 101-485(II), 101st Cong., 2d Sess. at 82-83, reprinted in 1990 U.S.C.C.A.N. 303, 365.  ADA – like the Equal Protection Clause, Title VII and the Fair Housing Act – prohibits a certain type of discrimination. And as is the case with the Equal Protection Clause, Title VII and the Fair Housing Act, injury under the ADA consists of the discrimination -- in and of itself --

that deprives the plaintiff of the opportunity to obtain a benefit rather than the lack of the benefit itself. Thus, to impose liability under Title III, *the barrier does not need to completely preclude plaintiff from entering or using the facility*; it need only interfere with the plaintiff's full and equal enjoyment of the facility. See <u>Moeller v. Taco Bell Corp.</u>, 816 F.Supp.2d 831, 848 (N.D.Cal.2011) (citing 1183*1183 <u>Doran v. 7-Eleven Inc.</u>, 524 F.3d 1034, 1041 n. 4 (9th Cir.2008) (discussing that the ADA "does not limit its antidiscrimination mandate to barriers that completely prohibit access.")). "Because the ADAAG establishes the technical standards required for `full and equal enjoyment,' if a barrier violating the ADAAG relates to a plaintiff's disability, it will impair the plaintiff's full and equal access, which constitutes `discrimination' under the ADA, thereby violating the ADA." <u>Chapman v. Pier 1 Imports (U.S.) Inc.</u>, 631 F.3d 939, 947 (9th Cir.2011). Here, the odds of the injury occurring again are certain where the building is not in compliance with the ADA and the Plaintiff Norberto Medina Rodriguez and every other person with the same disability is going to confront the same barrier on every future visit. Second, the Plaintiff Norberto Medina Rodriguez have an actual and present injury i.e. being deterred from visiting the building because he is at-all-times aware of the barriers at the Subject Facility. Third, Plaintiff Norberto Medina Rodriguez is deterred from patronizing the Store/Subject Facility and suffer the ongoing actual injury of not being able to access that Store/Subject Facility. Finally, the risk of injury in fact is not speculative because the discriminatory barriers or policies remain in place, the Plaintiff remain disabled, and the Plaintiffs are able and ready to visit the facility once it is made ADA compliant.

29.     A number of courts have rejected the "intent to return" or "likely to return" theory as the only way to demonstrate standing for injunctive relief on the grounds that "the odds of the injury recurring are certain where a building is not in compliance with the ADA" and any person "with the same disability" will face the same barrier on any visit. Instead, some courts, including the **First Circuit**, apply the "deterrent effect doctrine," which holds that an individual suffers an injury-in-fact sufficient to confer standing if he is deterred from visiting a public accommodation because it is not in compliance with the law; plaintiffs need not engage in the "futile gesture" of returning to a building with known barriers that the owner does not intend to remedy. As you know, the deterrence effect theory is grounded in language of the ADA stating that a plaintiff does not have to "engage in a futile gesture if such person has actual notice that a person or organization does not intend to comply" with the statute. Hunter II, 2013 WL 4052411, at *3, quoting 42 U.S.C. § 12188(a)(1). See, e.g., Chapman v. Pier 1 Imports (U.S.), Inc., 631 F.3d 939, 949-50 (9th Cir. 2011)("Demonstrating an intent to return to a noncompliant accommodation is but one way for an injured plaintiff to establish Article III standing to pursue injunctive relief. A disabled individual also suffers a cognizable injury if he is deterred from visiting a noncompliant public accommodation because he has encountered barriers related to his disability there."); **Disabled Ams. for Equal Access, Inc. v. Ferries Del Caribe, Inc., 405 F.3d 60, 64 (1st Cir.2005)** ("`[A] disabled individual who is currently deterred from patronizing a public accommodation due to a defendant's failure to comply with the ADA' and `who is threatened with harm in the future because of existing or imminently threatened noncompliance with the ADA' suffers actual or imminent harm sufficient to confer standing."); Steger v. Franco, 228 F.3d 889, 892 (8th

Cir.2000) ("Although plaintiffs need not engage in the `futile gesture' of visiting a building containing known barriers that the owner has no intention of remedying... they must at least prove knowledge of the barriers and that they would visit the building in the imminent future but for those barriers."); Hunter II,2013 WL 4052411, at *3 ("The second recognized way to establish injury-in-fact is for the 584*584 plaintiff to show that he is continually injured by being deterred from making use of the allegedly noncompliant public accommodation.... `[A] plaintiff who is deterred from patronizing a store suffers the ongoing actual injury of lack of access to the store.'"); Betancourt v. Federated Dep't Stores, 732 F.Supp.2d 693, 709 (W.D.Tex.2010) ("[T]he Supreme Court recognized deterrence as an injury in fact sufficient to confer standing for prospective relief in Friends of the Earth, Inc. v. Laidlaw Envt'l Services, 528 U.S. 167, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000)"; "[T]he risk of injury in fact is not speculative so long as the alleged discriminatory barriers remain in place, the plaintiff remains disabled, and the plaintiff is `able and ready' to visit the facility once it is made compliant. If the disabled plaintiff returns to the location, the same discrimination will occur until the facility is made compliant."). See also Fiedler v. Ocean Props., Ltd., 683 F.Supp.2d 57, 69 (D.Me.2010); Scherr v. Marriot Intern., Inc., 833 F.Supp.2d 945, 952-53 (N.D.Ill.2011) (**Noting that the "`deterrent effect doctrine'-supported by the reasoning of the Ninth, Eighth and First Circuits is gaining support" and applying it**) (citing Betancourt). In Kramer v. Lakehills South, LP, No. A-13-CA-591 LY, 2014 WL 51153, at *4 (W.D.Tex. Jan. 7, 2014), the district court applied the deterrent effect doctrine and observed: "[t] he Fifth Circuit appears to have endorsed this theory in Frame v. City of Arlington, 657 F.3d 215, 236 (5th Cir., 2011) (a Title II ADA case),cert. denied, ___ U.S.

___, 132 S.Ct. 1561, 182 L.Ed.2d 168 (2012),when it stated that "a disabled individual need not engage in futile gestures before seeking an injunction; the individual must show only that [the inaccessible object or place] affects his activities in some concrete way.".

30.   The violations present at Defendant's facility infringe Plaintiff's right to travel free of discrimination. Plaintiff has suffered, and continues to suffer, frustration and humiliation as the result of the discriminatory conditions present at Defendant's facility. By continuing to operate a place of public accommodation with discriminatory conditions, Defendant contributes to Plaintiff's sense of isolation and segregation and deprives Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges and/or accommodations available to the general public. By encountering the discriminatory conditions at Defendant's facility, and knowing that it would be a futile gesture to return unless he is willing to endure additional discrimination, Plaintiff is deprived of the meaningful choice of freely visiting the same accommodations readily available to the general public and is deterred and discouraged from additional travel. By maintaining a public accommodation with violations, Defendant deprives plaintiff the equality of opportunity offered to the general public.

31.   Plaintiff has suffered and will continue to suffer direct and indirect injury as a result of the Defendant's discrimination until the Defendant is compelled to comply with the requirements of the ADA.

32.   Plaintiff has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations in paragraph 16 of this Complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in

violation of the ADA by the Defendant. Plaintiff desires to visit the subject facility not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination.

33.   The Defendant has discriminated against the Plaintiff by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the subject property, as prohibited by 42 U.S.C. § 12182 et seq.

34.   The discriminatory violations described in paragraph 16 are not an exclusive list of the Defendant's ADA violations. Plaintiff requires the inspection of the Defendant's place of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access. The Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendant's buildings and its facilities, and have otherwise been discriminated against and damaged by the Defendant because of the Defendant's ADA violations, as set forth above. The Plaintiff and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein. In order to remedy this discriminatory situation, the Plaintiff requires an inspection of the Defendant's place of public accommodation in order to determine all of the areas of non-compliance with the Americans with Disabilities Act.

35.   Defendant has discriminated against the Plaintiff by denying him access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation

of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq. Furthermore, the Defendant continues to discriminate against the Plaintiff, and all those similarly situated by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

36.    Plaintiff is without adequate remedy at law and is suffering irreparable harm. Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendant pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

37.    Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff Injunctive Relief, including an order to require the Defendant to alter the subject facility to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facility until such time as the Defendant cures its violations of the ADA.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for:

A.    A declaratory judgment that Defendant is in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant's facilities, as described above, are not fully accessible to, and independently usable by, individuals who use wheelchairs or limited mobility;

B. A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504 (a) which directs Defendant to take all steps necessary to remove the architectural barriers described above and to bring its facilities into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that its facilities are fully accessible to, and independently usable by, individuals who use wheelchairs or individuals with limited mobility, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant's facilities come into compliance with the relevant requirements of the ADA to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law;

C. Payment of costs of suit;

D. Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505; and,

E. The provision of whatever other relief the Court deems just, equitable and appropriate.

## VIOLATIONS TO THE PUERTO RICO CIVIL RIGHTS ACT

38. Plaintiff incorporates all the preceding paragraphs.

39. Plaintiff is a person with disabilities within the meaning of the Puerto Rico Civil Rights Act who suffered intentional disability discrimination in violation of P.R. Laws Ann. tit. 1, § 13, which provides:

> § 13.  Civil rights--Discrimination in public places, businesses, transportation and housing
>
> > (a) No person shall be denied in Puerto Rico any access, service, and equal treatment in **public places and businesses** and in the means of transportation because of political, religious, race, color

or sex issues, **or for of any other reason** not applicable to all person in general.

40. Defendant(s) is/are person(s) within the meaning of P.R. Laws Ann. tit. 1, § 18 ("individual, corporation, association, business firm, business trust, or any corporate organization, as well as any agent, proxy, executor, manager, supervisor, employee, or realtor, and it shall include, further, any agency of the Government of Puerto Rico, and the officers, officials, agents, employees, and assignees thereof").

41. Defendant(s) operate a place for public accommodation/public business within the meaning of P.R. Laws Ann. tit. 1, § 18.

42. Pursuant to the Puerto Rico Bill of Rights for Persons with Disabilities,  P.R. Laws Ann. tit. 1, § 512b, "the disabled population should enjoy and have access on an equal basis to the offer and demand of public services, subject to applicable Commonwealth and **federal legislation** and jurisprudence for the rendering of public services."

43. The Puerto Rico Bill of Rights for Persons with Disabilities, P.R. Laws Ann. tit. 1, § 512k, also provides:

> **§ 512k.  Other actions and interpretation of laws**
>
> The execution of the action authorized by this chapter is **independent from any other civil or criminal action**, rights or remedy provided by the legislation in effect and none of these provisions shall limit or obstruct the execution of such actions, rights or remedies.
>
> **All legislation shall be construed in the manner that is most beneficial to persons with disabilities** and all branches of the government and natural or juridical persons, upon interpreting any legislation, **shall use a liberal and non-restrictive interpretation in favor of such persons**.
>
> It shall be the **duty of the courts**, departments, agencies, instrumentalities, public corporations, municipalities and any other entities of the Government of the Commonwealth of Puerto Rico **to liberally interpret all statutes**, regulations or ordinances pertaining to the rights of persons with disabilities for these to **conform to the principles set forth in the Constitutions of the United States of**

**America** and of the Commonwealth of Puerto Rico for the social purpose of protecting, defending and vindicating the rights of persons with disabilities, including those cases and claims which have been filed at the courts or administrative forums within the jurisdiction of the Commonwealth of Puerto Rico prior to the approval of this act and to its ruling becoming final and binding.

(Emphasis added).

44. Pursuant to the Puerto Rico Bill of Rights for Persons with Disabilities,  P.R. Laws Ann. tit. 1, § 512a, persons with disabilities, like Plaintiff, are entitled to:

   a. The full guarantee of all the rights, benefits, responsibilities and privileges on **equal terms with those of persons without disabilities**.

   b. Freedom from interference, coercion, **discrimination or reprisals for the exercise of their <u>civil rights</u>**.

45. Plaintiff, suffered **intentional disability discrimination** because the defendant(s) never attempted to comply with the requirements of the American with Disabilities Act and the laws of Puerto Rico, e.g. there was no self-assessment plan, there is no remedial plan, and the defendant conducted business for years ignoring the American with Disabilities Act. Defendant intentionally failed to provide accessible parking space solely for financial gain. Defendant's intentional misconduct contributed (and contributes) to Plaintiff's sense of isolation and segregation and deprives Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges and/or accommodations available to the general public, causing him emotional damages in an amount to be determined at trial.

46. The plaintiff is entitled to relief pursuant to  P.R. Laws Ann. tit. 1, § 14, which provides:

   § 14.  Civil rights--Penalties; actions for damages; punitive damages

   Any person who shall deliberately or by false reports or by any subterfuge violate any of the provisions hereof shall be guilty of a misdemeanor and shall be punished by a fine of not less than one hundred dollars ($100) nor more than five

24

hundred dollars ($500), or by imprisonment in jail for a term of not less than thirty (30) days nor more than ninety (90) days, or by both penalties, in the discretion of the court.

Any person aggrieved by any violation of §§ 13--18 of this title **may bring the corresponding civil action in a competent court for the <u>damages such violation may have caused him</u>**.

If the remedy is granted, the court shall, <u>**in addition**</u> **to the proper compensation for losses and damages caused, impose the payment of <u>another indemnity as punitive damages</u>**.

(Emphasis added).

47.    Plaintiff requests a trial by jury on all issues triable by jury.

**WHEREFORE**, Plaintiff respectfully requests:

a)    The Court issue a Declaratory Judgment that determines that the Defendant at the commencement of the subject lawsuit is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 <u>et</u> <u>seq</u>.

b)    Injunctive relief against the Defendant including an order to make all readily achievable alterations to the facility; or to make such facility readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendant to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such stops that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

a)    Compensatory damages as allowed by the Puerto Rico Civil Rights Act, P.R. Laws Ann. tit. 1, § 13, in an amount according to proof.

b)      Punitive damages as allowed by the Puerto Rico Civil Rights Act, P.R. Laws Ann. tit. 1,

§ 13, **in excess of one million dollars ($1,000,000).**

c)      An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205.

d)      Such other relief as the Court deems just and proper, and/or is allowable under Title III of

the Americans with Disabilities Act.

**RESPECTFULLY SUBMITTED**,

**/S/JOSE CARLOS VELEZ-COLÓN, ESQ.**
**USDC-PR NO.: 231014**
jcvelezcolon@gmail.com

PO BOX 2013
BAYAMON PR 00960

TEL: (787) 599-9003

*Attorney for*
*Norberto Medina-Rodriguez*



Americans with Disabilities Act
ACCESSIBILITY-RELATED LITIGATION
JOSÉ CARLOS VÉLEZ COLÓN, ESQ.
JCVELEZCOLON@GMAIL.COM

P.O BOX 2013
BAYAMÓN, PR 00960
TEL.: (787) 599-9003